UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chen Lin (A-Number: 099-631-339), | No. 1:26-cv-00575-KES-SKO (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| Warden, Golden State Annex Detention Facility; Current or Acting Field Office Director, San Francisco Field Office Director, United States Immigration and Customs Enforcement; Current or Acting Director, United States Immigration and Customs Enforcement; Current or Acting Secretary, United States Department of Homeland Security; Current or Acting Attorney General of the United States, | Doc. 1 |
| Respondents. | |

Petitioner Chen Lin is an immigration detainee proceeding pro se with a petition for writ of habeas corpus and motion for temporary restraining order. Docs. 1, 2. For the reasons explained below, the petition for writ of habeas corpus is granted.

**I.     Background**

Petitioner is a citizen of China. *See* Doc. 11-1, Gallenkamp Decl. at ¶ 6. He entered the United States without inspection on January 21, 2007, and was apprehended by immigration authorities. *See id.* ¶ 7. Immigration authorities served him with a notice to appear for removal proceedings and released him after he posted a $50,000 bond. *Id.* On July 15, 2010, petitioner

1

was convicted of theft and larceny in Utah.  *Id.* ¶ 8.

On November 22, 2011, an immigration judge ordered petitioner removed to China.  *Id.* ¶ 9.  The Board of Immigration Appeals affirmed that decision on June 27, 2013, and the Ninth Circuit dismissed petitioner's petition for review on March 17, 2014.  *Id.*  Although 8 U.S.C. § 1231(a)(2)(A) mandates the detention of noncitizens for a period of three months after their removal orders become final, Immigration and Customs Enforcement ("ICE") did not detain petitioner on March 17, 2014, when his removal order became final.  Doc. 18 at 2; *see* Doc. 17, Gallenkamp Decl. at ¶ 10.  Respondents provide no explanation for why ICE did not detain petitioner and execute his removal order at that time.  *See* Docs. 11, 17.

On March 23, 2017, petitioner was convicted of fraud and theft, including identify theft, in Minnesota.  Doc. 11-1, Gallenkamp Decl. at ¶ 11.  On January 17, 2020, petitioner was convicted of driving without a license in Minnesota.  *Id.* ¶ 12.

Petitioner is a father to two children, and his children are ages three and four.  Doc. 1 at 9.  Petitioner also has a brother in the United States who is actively pursuing asylum.  *Id.*

On September 11, 2025, petitioner was arrested for felony theft and financial elder abuse in Texas.  Doc. 11-1, Gallenkamp Decl. at ¶ 13.  Petitioner was transferred from the custody of state authorities to ICE on September 18, 2025.  *Id.* ¶¶ 13–14.  Petitioner is now detained at the Golden State Annex Detention Center.  *See* Doc. 1.

Petitioner mailed a pro se petition for writ of habeas corpus and motion for temporary restraining order on January 17, 2026, and those documents were docketed with this Court on January 23, 2026.  *See* Docs. 1, 4.  The Court set a briefing schedule on the motion for temporary restraining order, and respondents filed a response on January 30, 2026.  Doc. 11.[1]  Petitioner filed a reply on February 12, 2026.  Doc. 14.

The government submitted a request for a travel document to China on January 21, 2026, over four months after the date it detained petitioner.  Doc. 11-1, Gallenkamp Decl. at ¶ 11.  That

---

[1] In their response, respondents state that they "are amenable to the Court ruling on the underlying habeas petition" and "waive hearing on the motion."  Doc. 11 at 1.  The Court will therefore rule directly on the petition.

request remains pending.  *Id.*  The declaration of deportation officer Gallenkamp, which was filed on January 30, 2026, states: "I am informed and believe that China will issue petitioner's travel documents within the next three months."  *Id.* ¶ 19.

## II.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    Discussion

Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), petitioner's pro se petition argues that his detention has become unduly prolonged in violation of the Due Process Clause.  *See* Doc 1.  In *Zadvydas*, the Supreme Court recognized that 8 U.S.C. § 1231 would pose a "serious constitutional problem" if it were construed to "permit[] an indefinite . . . deprivation of human liberty[.]"  *Zadvydas*, 533 U.S. at 690–92.  The Court therefore read an implicit constitutional limitation into 8 U.S.C. § 1231:  If, six months after being ordered removed, an immigration detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release

3

the noncitizen.[2] *Id.*[3]

Over twelve years have passed since petitioner was ordered removed to China, and over seven months have passed since petitioner was detained. *See* Doc. 11-1, Gallenkamp Decl. at ¶¶ 9, 13–14. "An undue delay in removal for an individual alien beyond the typical [90-day] removal period would naturally suggest that removal is unlikely." *Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (explaining that the mere passage of time may suffice as good reason when "[t]he Government ha[s] brought forward nothing to indicate that a substantial likelihood of removal subsists"). Petitioner points out that this long period of inaction and respondents' failure to explain why the government has not removed him for the past twelve years demonstrate that China is likely unwilling to accept him. *See* Doc. 14 at 3. Petitioner also points out that ICE did not request a travel document until January 21, 2026, four months after he was detained, and coincidentally, two days after he mailed his petition for writ of habeas corpus to this Court. *See* Doc. 1; Doc. 11-1, Gallenkamp Decl. at ¶ 16. Respondents do not explain why they waited four months to request a travel document, *see* Doc. 11, and this long delay suggests that the government knew that requesting a travel document would likely be futile. Petitioner has shown that there is "good reason to believe" that there is no significant likelihood of removal in the reasonably foreseeable future. *See id.* (granting habeas relief and ordering petitioner released

---

[2] *Zadvydas* involved a petitioner who had been a lawful permanent resident before being ordered removed. *Zadvydas*, 533 U.S. at 682. The Ninth Circuit subsequently held that *Zadvydas*'s interpretation of the statute applied equally to inadmissible noncitizens, *see Xi v. U.S. I.N.S.*, 298 F.3d 832, 834 (9th Cir. 2002), such as petitioner, *see* Doc. 8-1, Ex. A. The Supreme Court later affirmed a decision of the Ninth Circuit which relied on its earlier opinion in *Xi. See Clark v. Martinez*, 543 U.S. 371, 376–79 (2005).

[3] A specific regulation, 8 C.F.R. § 241.13(i), was promulgated in response to the Court's decision in *Zadvydas* to authorize the re-detention of those who have been ordered removed, detained, then "released under an order of supervision." *See* 8 C.F.R. § 241.13(i); *Diouf v. Napolitano*, 634 F.3d 1081, 1089 n.10 (9th Cir. 2011). This Court and many others have evaluated the requirements of that regulation; it provides a different framework than *Zadvydas. See, e.g., Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157 (E.D. Cal. 2025). That regulation does not appear to apply in this case, however, because petitioner was not previously detained and released, and the government did not issue him an order of supervision after his removal order became final in 2014. Doc. 18 at 2; *see* Doc. 17, Gallenkamp Decl. at ¶ 10.

4

from custody after eleven month delay in removing petitioner to China); *Belach v. Marin*, No. 5:25-CV-03452-SPG-RAO, 2026 WL 75920, at *4 (C.D. Cal. Jan. 5, 2026) (ordering release of noncitizen detained for seven months because no travel document had been provided by country of removal).

Respondents fail to rebut petitioner's showing.  The declaration of deportation officer Gallenkamp, which was filed on January 30, 2026, states: "I am informed and believe that China will issue petitioner's travel documents within the next three months."  Doc. 11-1, Gallenkamp Decl. at ¶ 19.  Three months have now passed since that declaration was filed, and respondents have not provided any indication that China has issued such a travel document.

Respondents argue that the government has "successfully obtained hundreds of travel documents from China for similarly situated detained individuals" in the past six months. Doc. 11 at 4.  Without more supporting information, this argument is unpersuasive.  Respondents do not identify how many requests the government made for travel documents to China or the number approved, and without information on how often similar such requests are approved, there is no basis to infer that there is a significant likelihood of approval in this case.  And while respondents state that travel documents were issued for "similarly situated detained individuals," they do not explain how any such individuals were similarly situated to petitioner.  *See id.* Respondents provide no information about the criteria China considers when deciding whether to issue a travel document, or whether petitioner's circumstances meet those criteria.  *See id.* Respondents also do not provide information about whether China has acknowledged their request for a travel document.  *See id.*  And they do not claim that they are attempting, or will attempt, to remove petitioner to a third country.  *See id.*

On this record, the Court finds that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future, and that his continued detention is therefore no longer authorized by 8 U.S.C. § 1231.

## IV.   Conclusion and Order

Accordingly,

1. The petition for writ of habeas corpus, Doc. 1, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.

4. Respondents are ORDERED to file a status report within seven (7) days of the date of this Order confirming that petitioner was released.

5. The Clerk of Court is directed to close this case and enter judgment for petitioner. The Clerk is directed to serve Golden State Annex with a copy of this Order.

IT IS SO ORDERED.

Dated:    May 2, 2026

_____
UNITED STATES DISTRICT JUDGE